No. 95-2898

Bank of America National Trust    *
and Savings Association, as    *
Trustee for Farmer Mac    *
Agricultural Real Estate Trust,    *
Series 1992-2,    *
   *
           Appellant,    *
   *
    v.    *
   *
Bobby T. Shirley; Patricia E.    *
Shirley, Shirley AG Service,    *
Inc.,    * Appeal from the United States
   * District Court for the
           Appellees.    * Southern District of Iowa
   *
-------------    *
   *
Equitable Life Assurance    *
Society of the United States;    *
Western Farm Credit Bank;    *
Federal Agricultural Mortgage    *
Corporation; Iowa Bankers    *
Association,    *
   *
           Amicus Curiae.    *

Submitted:  December 11, 1995

Filed:  September 25, 1996

Before McMILLIAN, JOHN R. GIBSON and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Bank of America National Trust & Savings Association (BOA), as trustee for the Farmer Mac Agricultural Real Estate Trust, Series 1992-2, appeals from a final order entered in the District Court for the Southern District of Iowa granting partial summary

judgment in favor of Bobby T. Shirley, Patricia Shirley and Shirley Ag-Service, Inc. (appellees). <u>Bank of America National Trust & Savings Ass'n v. Shirley</u>, No. 1-93-CV-100033 (S.D. Iowa May 19, 1994) (order granting partial summary judgment). For reversal BOA argues the district court erred in (1) construing Iowa Code Ann. § 535.9(2) (West 1987) to bar enforcement of a contractual prohibition against prepayment and (2) holding Iowa Code Ann. § 535.9(2) was not expressly preempted by federal law. For the reasons discussed below, we hold federal law expressly preempts the state law and accordingly reverse the order of the district court.

The following statement of facts is taken in large part from the district court's order granting partial summary judgment. The material facts are not disputed. In December 1990 appellees borrowed $3 million which they promised to repay pursuant to a schedule set forth in a promissory note payable to 3 Rivers Investment, Inc. (3 Rivers). The loan was secured by a mortgage on several parcels of agricultural land. The note provided for an initial interest-only payment and then semi-annual payments of interest and principal in the amount of $175,560.76, over a term of 15 years, beginning on July 1, 1991, and ending on January 1, 2006. The promissory note included the following prohibition against prepayment, set forth in capital letters above the signature line: PAYMENTS IN EXCESS OF THE PAYMENTS PROVIDED FOR IN THIS NOTE ARE NOT PERMITTED.

3 Rivers then sold the loan to Prudential Insurance Co. and Prudential Agricultural Credit, Inc. (together Prudential). Prudential provided the funds that were distributed to appellees. After performing an updated appraisal of the mortgaged property, Prudential pooled the loan with other agricultural loans and sold the pool into the "secondary market" pursuant to the Federal Agricultural Mortgage Corp. program (Farmer Mac), and assigned it

to BOA as trustee for Farmer Mac Agricultural Real Estate Trust, Series 1992-2.  As a result, BOA owns the loan in its capacity as

trustee for the holders of certain securities (certificate holders) pursuant to the pooling and servicing agreement between Prudential and BOA. Farmer Mac guarantees payment to the senior certificate holders.

In late June 1993 appellees contacted Prudential and asked for a "pay-off figure" so they could prepay the note. Prudential advised appellees that the note did not permit prepayments. Appellees responded that they had the right to prepay the note, regardless of the note's express terms, pursuant to Iowa Code Ann. § 535.9(2), which provides in pertinent part:

> Whenever a borrower under a loan prepays part or all of the outstanding balance of the loan the lender shall not receive an amount in payment of interest which is greater than the amount determined by applying the rate of interest agreed upon by the lender and the borrower to the unpaid balance of the loan for a period of time during which the borrower had the use of the money loaned; and the lender shall not impose any penalty or other charge in addition to the amount of interest due as a result of the repayment of that loan at a date earlier than is required by the terms of the loan agreement.

In September 1993 BOA filed an action seeking declaratory judgment that Iowa Code Ann. § 535.9(2) did not make the no-prepayment term unenforceable. BOA argued that the state statute precluded penalties for prepayment but did not preclude prohibitions against prepayment, and, if the state statute did bar prohibitions against prepayment, federal law (Title VIII of the Farm Credit Act, 12 U.S.C. § 2279aa-12(d)) preempted the state statute. The parties filed cross-motions for summary judgment. The district court granted partial summary judgment in favor of appellees. The district court construed Iowa Code Ann. § 535.9(2) to prohibit prepayment penalties in the form of interest or other

-4-

finance charges as well as contractual terms that prevent borrowers from prepaying any portion of the loan.  The district court

reasoned that the complete prohibition against prepayment is in effect a penalty of the most extreme kind.  For this reason, the district court held that the promissory note term prohibiting prepayment was unenforceable.  Slip op. at A-6 to A-9 (pagination as reproduced in addendum to Brief for Appellant), citing Los Quatros, Inc. v. State Farm Life Insurance Co., 110 N.M. 750, 800 P.2d 184 (1990), and Naumburg v. Pattison, 103 N.M. 649, 711 P.2d 1387 (1985).  Accord Groseclose v. Rum, 860 S.W.2d 554 (Tex. Ct. App. 1993) (statute providing that prepayment charge or penalty may not be collected on loan construed to mean that a provision barring prepayment is a "penalty").  The district court also held that federal law, 12 U.S.C. § 2279aa-12(d), did not apply because the loan was not made by an "originator or certified facility."  Slip op. at A-10.  The district court found that the loan was "originated" by 3 Rivers, which is not an "originator or certified facility" under Farmer Mac, and not by Prudential, which is both an "originator," 12 U.S.C. § 2279aa(7), and a "certified facility," id. § 2279aa(3)(A).  Slip op. at A-10.

Appellees had filed a counterclaim and third-party complaint against Prudential.  Appellees dismissed their claims without prejudice, and both sides filed motions for entry of final judgment.  The district court entered final judgment in favor of appellees and this appeal followed.

We review a grant of summary judgment de novo.  The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d

664, 666 (8th Cir. 1992); <u>St. Paul Fire & Marine Insurance Co. v.</u> <u>FDIC</u>, 968 F.2d 695, 699 (8th Cir. 1992).  Where the unresolved

issues are primarily legal rather than factual, summary judgment is particularly appropriate. E.g., Crain v. Board of Police Commissioners, 920 F.2d 1402, 1405-06 (8th Cir. 1990). We agree with the district court that the only issues presented are questions of law; unlike the district court, however, we hold the federal law expressly preempts the state statute.

BOA first argues that the district court erroneously construed Iowa Code Ann. § 535.9(2) to bar enforcement of contractual terms prohibiting prepayment. BOA argues that the plain language of the state statute indicates that the statute does not apply to the right to prepay but only provides that lenders cannot enforce any prepayment penalties. In other words, BOA argues the state statute does not grant borrowers a right to prepay; rather, the state statute addresses the rights of borrowers and lenders when a right to prepay exists. BOA argues that the state statute does not address whether or in what circumstances a borrower may prepay; it merely bars enforcement of any penalties for prepayment. Moreover, BOA argues that a right to prepay should not be inferred from the silence in § 535.9(2). BOA contrasts § 535.9(2) with the state legislature's express provision of a right to prepay granted for real estate loans made by savings and loans in § 534.21(10) (now repealed) or by credit unions in § 533.16(11).

BOA also argues that construing Iowa Code Ann. § 535.9(2) to grant borrowers a right to prepay is inconsistent with Iowa case law. BOA argues that, for more than 100 years, Iowa has followed the common law "perfect tender in time" rule under which lenders do not have to accept prepayment and can enforce the payment schedules set forth in promissory notes. Anderson v. Haskell, 45 Iowa 45 (1876). BOA further argues that the Iowa Supreme Court reaffirmed the perfect tender in time rule in 1981, after the state

legislature enacted Iowa Code Ann. § 535.9(2). Lett v. Grummer, 300 N.W.2d 147, 150 (Iowa 1981) (decision does not mention the statute).

We need not decide this difficult question of state law because we hold that federal law expressly preempts application of Iowa Code Ann. § 535.9(2) to agricultural loans made by an originator or certified facility guaranteed by Farmer Mac. Whether or not Iowa Code Ann. § 535.9(2) merely bars enforcement of contractual terms that prohibit borrowers from prepaying any portion of their loans as unlawful penalties or affirmatively grants borrowers the right to prepay is irrelevant when considering whether the state law is preempted.

Title VIII of the Farm Credit Act, 12 U.S.C. § 2279aa-12(d), at the time of the district court's decision, provided in pertinent part:

> Any provision of the Constitution or law of any State which expressly limits the rate or amount of interest, discount points, finance charges or other charges that may be charged, taken, received, or reserved by agricultural lenders or certified facilities shall not apply to any agricultural loan made by an originator or a certified facility in accordance with this [subchapter] that is included in a pool for which [Farmer Mac] has provided a guarantee.

BOA argues that this subsection is not limited to preemption of state usury laws (the subsection heading is "state usury laws superseded") and preempts all state statutes that limit any charges or otherwise limit the amount of interest that a lender can receive. BOA argues that the Iowa statute in question expressly limits interest penalties that an agricultural lender can assess and, by granting borrowers the right to prepay, prevents lenders

-10-

from collecting the amount of interest agreed to by the parties.[1]

The district court did not decide the preemption issue because it held that federal law, 12 U.S.C. § 2279aa-12(d), did not apply to appellees' loan. Slip op. at A-10. The district court found that the loan was originated by 3 Rivers, which is not an "originator or certified facility" under Farmer Mac, and not by Prudential, which is both an "originator," 12 U.S.C. § 2279aa(7), and a "certified facility," id. § 2279aa(3)(A).

As discussed below, we hold that the federal law applies and that the federal law expressly preempted the state statute.

> Congress' intent is the touchstone of our analysis of whether [the federal law] preempts the [state statute]. Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." When Congress has not spoken expressly, a state law is preempted if it conflicts with federal law or if federal law "occupies a legislative field," indicating that Congress intended to leave no room for the states to supplement the federal law.
>
> When Congress has spoken expressly, however, the preemptive scope of a federal law is governed

---

[1]The Federal Agricultural Mortgage Corp. (Farmer Mac) filed a brief as amicus curiae in support of BOA on this issue. Farmer Mac argues that Title VIII of the Farm Credit Act prohibits application of the state statute to appellees' loan. For this reason Farmer Mac takes no position on whether the district court correctly construed the Iowa statute to bar prepayment. Farmer Mac thus argues the term barring prepayment is enforceable. Farmer Mac also agrees with BOA that, contrary to the district court's finding, Prudential was an "originator" of the loan and that the loan was made in accordance with the Farmer Mac program.

Equitable Life Assurance Society/ Western Farm Credit Bank and the Iowa Bankers Association also filed amicus briefs in support of BOA.

entirely by the express language. "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable

indicium of congressional intent with respect to state authority,' 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation."

Weber v. Heaney, 995 F.2d 872, 875 (8th Cir. 1993) (citations omitted).

Although § 2279aa-12(d) did not contain the term "preempt," it plainly provided that a state law "which expressly limits the rate or amount of interest, discount points, finance charges or other charges . . . shall not apply to any agricultural loan made by an originator or a certified facility in accordance with this [subchapter] that is included in a pool for which [Farmer Mac] has provided a guarantee." (Emphasis added.) The subsection heading even included the term "superseded." We think § 2279aa-12(d) was an explicit statement by Congress of its intent to preempt state law. Our task is therefore to identify the domain expressly pre-empted by § 2279aa-12(d). Freightliner Corp. v. Myrick, 115 S. Ct. 1483, 1488 (1995).

In the present case, the question is whether Iowa Code Ann. § 535.9(2) is a state law which "expressly limits the rate or amount of interest, discount points, finance charges or other charges." In our view, Iowa Code Ann. § 535.9(2) clearly falls within the domain expressly preempted by § 2279aa-12(d). Our reading of the scope of § 2279aa-12(d) was confirmed by its amendment in 1996. Leaving the sub-section heading the same, Congress struck subsection (d) and replaced it with the following:

A provision of the Constitution or law of any State shall not apply to an agricultural loan made by an originator or a certified facility in accordance with this title for sale to the Corporation or to a certified facility for inclusion in a pool for which the

-13-

Corporation has provided, or has committed to provide, a guarantee, if the loan, not later than 180 days after the date the loan was made, is sold to the Corporation or

> included in a pool for which the Corporation has provided a guarantee, if the provision--
>
> > (1) limits the rate or amount of interest, discount points, finance charges, or other charges that may be charged, taken, received, or reserved by an agricultural lender or a certified facility; or
> >
> > (2) limits or prohibits a prepayment penalty (either fixed or declining), yield maintenance, or make-whole payment that may be charged, taken, or received by an agricultural lender or a certified facility in connection with the full or partial payment of the principal amount due on a loan by a borrower in advance of the scheduled date for the payment under the terms of the loan, otherwise known as a prepayment of the loan principal.

Farm Credit System Reform Act of 1996, § 112, 1996 U.S.C.C.A.N. (106 Stat.) 162, 165-66 (to be codified at 12 U.S.C. § 2279aa-12(d)) (effective Feb. 10, 1996). Thus, the version of § 2279aa-12(d) now in effect expressly refers to state laws which limit or prohibit prepayment penalties. Cf. Smiley v. Citibank (South Dakota), N.A., 116 S. Ct. 1730, 1733-35 (1996) (deferring to regulation interpreting statutory term "interest" to include credit card late-payment fees).

As noted above, the district court held § 2279aa-12(d) did not apply to appellees' loan because 3 Rivers closed the loan and 3 Rivers was not an originator or a certified facility. We do not agree. Section 2279aa-12(d) applies to any loan that is "made by an originator or a certified facility in accordance with this [subchapter] that is included in a pool for which [Farmer Mac] has provided a guarantee." (The 1996 amendment applies to any loan "made by an originator or a certified facility in accordance with this title for sale to the Corporation or to a certified facility for inclusion in a pool for which the Corporation has provided, or

-15-

has committed to provide, a guarantee.")  It is undisputed that the loan was originally closed by 3 Rivers and that 3 Rivers was not an

originator or a certified facility.  It is also undisputed that the loan was "included in a pool for which [Farmer Mac] has provided a guarantee."  However, we think 3 Rivers's status is irrelevant. Rather, it is Prudential's status that is dispositive, at least for purposes of the Farmer Mac loan program.

Prudential is an originator and a certified facility.  Title 12 U.S.C. § 2279aa(7) provides that "[t]he term 'originator' means any . . . entity that originates and services agricultural mortgage loans."  However, the statute does not define "originates."  Farmer Mac has interpreted the term "originates" to include causing the performance of an updated appraisal or reappraisal of an existing loan, "regardless of the identity of the entity in whose name the loan was originally closed."  Federal Agricultural Mortgage Corp., Securities Guide §§ 3.38(e), 4.6(e) (1990).  Under this definition, an originator can be an entity (e.g., Prudential) that purchases an "existing loan" from another entity that actually closed the loan (e.g., 3 Rivers) and performs an updated appraisal or reappraisal of an existing loan.  "Existing loans" are qualified loans for which the most recent appraisal (excluding an updated appraisal or reappraisal) precedes the application for a Farmer Mac Guarantee by more than 180 days.  Id. at 4.  Appellees' loan was an "existing loan" because the original appraisal was performed on July 12, 1990, approximately 5 months before the loan closed in December 1990.  Prudential's application for a Farmer Mac Guarantee was dated May 31, 1992.  Thus, in accordance with the definition of "existing loan," the original appraisal on appellees' loan preceded the application for a Farmer Mac Guarantee by more than 180 days. Prudential caused an updated appraisal of the loan to be performed on May 1, 1992, so that the loan could be pooled in accordance with the requirements of the Securities Guide.  Because appellees' loan was an existing loan and Prudential caused an updated appraisal to

be performed, Prudential is deemed to be the originator of the loan, even though 3 Rivers originally closed the loan.  For this

reason, appellees' loan was "made by an originator or certified facility in accordance with" Title VIII, that is, Prudential.

In sum, we hold that 12 U.S.C. § 2279aa-12(a) expressly preempts application of Iowa Code Ann. § 535.9(2) to agricultural loans made by an originator or certified facility guaranteed by Farmer Mac. Accordingly, we reverse the order of the district court granting partial summary judgment in favor of appellees.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-19-